Good morning, Your Honor. Tony Farmani on behalf of the panel and Mr. San Nicolas. Your Honor, Mr. San Nicolas is serving a life sentence for murder, and all this state ever showed was that he foolishly agreed to arrange and referee a one-on-one fight between two people, rival gang members, one of whom was his friend Varela. It's undisputed that the theory of the prosecution... He agreed to arrange a one-on-one fight. He drove to rival... he was the driver of the car, right? That's correct, Your Honor. He drove to rival gang territory... That's correct, Your Honor. ...looking to set up this one-on-one fight... With two other gang members. With two other gang members and... In his car.  He was armed, but he never used a gun. Well, wasn't there a witness that followed that said the driver of the car got out and shot? It's undisputed he never used a gun. It is undisputed. He offered it to Varela. He offered it to Varela. No, he... He showed it to Varela, said, do you want this? And Varela said no. He offered it to Varela. Let me back up for a second and tell... You're referring to what happened before they went into Baker Street. What happened was... Minutes before. Minutes before... You know, what happened was Varela gets into a scuffle, gets sucker-punched by a guy from Baker Street. Goes home, calls my client. We know, we know. So, I think the notion or the fact or the witness testimony that Mr. Sam Nichols was carrying a gun is simply irrelevant, and here's why. The jury found that he wasn't even vicariously charged in a firearm. Meaning the fact that Alvarado, which is the culprit here who fired the gun, had nothing to do whatsoever with Mr. Sam Nichols. Another critical factor here, Your Honor, the judge at the close of the prosecution's case dismissed the conspiracy charges right off the bat. Found that there was absolutely no agreement whatsoever between Alvarado, the shooter, and Mr. Sam Nichols. This is an AEDPA case? It is. This is subject to AEDPA? At first glance, it would appear to be, but it isn't. AEDPA doesn't apply to the first claim here, and there are two reasons why it doesn't.  So, this is different than Richter, because Richter, you had California Supreme Court adjudicating a habeas petition. This was a direct review. There was never, ever a state habeas petition filed here. Direct review, the California summary denies it. So, under California law, and under this, of course, recent case, Williams, that is not, that does not constitute an adjudication of the claim. You go back to the court of appeal. You look through that opinion of the California Supreme Court summary denial to the California court of appeals opinion. The California court of appeal never, ever adjudicated the constitutional claim here. That's precisely what Williams held. The constitutional claim of Jackson versus the evidence. We've got two certified claims here. Well, then under Penholster v. Collins, shouldn't you be asking for a stay and go back and get a state court adjudication and post-conviction remedies? Your Honor, he did exhaust the claim. The AG is already, the State has already conceded that in their answer. They waived any exhaustion argument to begin with, but he did, in fact, exhaust that claim. The question becomes, under Williams, which is a case decided by this Court in 2011, the question is, did the California court of appeal, given that the California Supreme Court summary denial was not an adjudication under California law, unlike the Richter case. The Richter case, he had on a habeas summary denial. Over here, you have a summary denial on a direct petition for review. That's a very important distinction. Once you make that distinction, then Richter simply doesn't apply. The presumption, Richter presumption doesn't apply. Then you look through to the California court of appeals opinion. The California court of appeals opinion adjudicated Mr. St. Nicholas's insufficiency of the claim, insufficiency of evidence claim, under California law. In fact, all the court did was talk about penal code section 1111, which is the amount of evidence you need to corroborate accomplished testimony. Never addressed a Sixth Amendment claim. Furthermore, Your Honor, putting that aside, you have a California court of appeal opinion that time and time again says proof beyond a reasonable doubt is not required. It says that it need not prove every element of the crime, the accomplished corroboration. Obviously, they're going forward on a mistaken view that this is only a statutory claim. It wasn't. It was a constitutional claim, sufficiency of the evidence claim. So your argument is that we can review the sufficiency of the evidence claim as if we were the California court of appeal? Because you would review it? Let me finish. Because no other court has. I would the way I would say, Your Honor, you would review the first claim, the insufficiency of the evidence claim, de novo, because it has never been adjudicated. Now, I take your point of view, Your Honor, is it the same as the one that the jury has made?  No?                  No. No. No.                  No. Let's assume you're right about that.  Mr. Viena, do you agree with Mr. Farmani that there was a binding determination by the court, trial court, that Alvarado was not a confederate? No. I didn't think so.  Just in case I miss any of it, I think I disagree with essentially everything that Mr. Farmani said. So there's no question about that. I disagree with much of what he said. Am I mistaken in my memory that there was a woman driving in the area and saw some of this? No, you are not mistaken at all, Your Honor. trial, although a reluctant witness at trial, was a woman who was involved with one of the Baker Street gang members or former gang members, and she arrived on the scene shortly after Mr. San Nicolas and his three confederates had slowly driven through the Baker Street area, flashed gang signs, and issued an invitation to fight.  As I read it, it's somewhat difficult to tell how much she witnessed, but her description is that as she arrived, she can see that something is wrong, and she sees four people emerge from Mr. San Nicolas' car, essentially simultaneously, two of them with guns in their hands, and shooting follows almost immediately. And did she testify that the driver of the vehicle, and there's no doubt that was San Nicolas, right? Did she testify that the driver of the vehicle got out and fired his weapon? She did, Your Honor, although, I mean, to be fair, I would have to say that I think she was mistaken about that. That is certainly against the weight of the evidence, but as you may be implying, since that was evidence before the jury, the jury could disagree with my assessment of it, and they were entitled to that. They could have relied upon that. They could have, yes, Your Honor. According to, well, I think that is clear from Smith v. Cavazos or Cavazos v. Smith that I referred the Court to here yesterday, and other cases talking about essentially the jury decides what weight to give any of the evidence and what to believe and what not to believe and resolves conflicts in the evidence. But even if the jury ---- Well, Smith v. Cavazos, I'm familiar with that case, but that was an AEDPA case. Mr. Farmani says this is not an AEDPA case. Do you want to address that? Yes, Your Honor. Mr. Farmani, I believe, is mistaken about whether this is an AEDPA case or not. The case was raised or the issue about sufficiency of the evidence was raised in a somewhat unusual manner in the State court. And I'm sorry, I don't believe that the AOB is in the excerpts of record, but if the Court would like it, the AOB, meaning Mr. Sandnicholas's opening brief in the appeal, is not in the excerpts of record. But the claim that was raised was sort of a combination claim. That was that because the accomplice testimony of Mr. Martinez and Mr. Varela was not adequately corroborated without their testimony, there wasn't sufficient evidence that could be used to fight challenge or breach of the peace by challenging someone to a fight in public. And that's why most of or much of the decision from the court of appeal addresses the question about whether there's sufficient evidence or whether there was sufficient corroboration. And that's why the Court makes the statement, for example, that to show adequate corroboration, you don't have to show proof beyond a reasonable doubt of each element of the crime. His statement with regard to that is out of context, I believe. So the Court spent a great deal of time talking about corroboration, finding it to be adequate, and then after finding it to be adequate, not spending much time on the remaining question about sufficiency of the evidence that he was an aider and a better because it was unnecessary. If I might indicate how I think the jury could have seen the evidence, and seen the prosecutor's argument that this was an organized gang hit. That is, not just that Mr. San Nicolas was not a mediator or a diplomat, but he was engaged in a provocation to fight with a highly foreseeable outcome that someone from the San Nicolas car would shoot someone in the Baker Street gang. Mr. Varela wants to retaliate because he's been sucker punched. He and Martinez weren't able to achieve their goal, their required goal as gang members, after the fight broke out at the Rite Aid. Varela and Martinez go home, and Varela immediately calls San Nicolas, who has a history of gang association. Mr. San Nicolas immediately comes over in a car. As they're getting in the car to go, Varela says to Martinez, we are going to start a fight. That is, not I'm going to fight Scrappy, we are going to start a fight. So San Nicolas' attempt to narrow the involvement and the purpose of driving to Baker Street is mistaken. They go not directly to Baker Street, but instead they go directly to the motel room where San Nicolas and Alvarado are staying together. San Nicolas has gotten that. As they pull up, San Nicolas shouts, Baker. So he indicates to Alvarado what's going on. That is, he and other gang members are in the car, and they're headed to Baker Street. Or at least certainly the jury could infer that that communication indicates both of them know what's going on because Alvarado immediately gets in the car. Just preceding that, according to Varela, San Nicolas had pulled out his gun and offered it to Varela, which is pretty darn good evidence of what was foreseeable in this fight that Varela is going over to start. Some shooting is going to occur. Was it Alvarado that testified that San Nicolas said we're going over there? I think those are the words, we're going over there. But it is clear from his shout, Baker, that he knows where they're going. And it's also obvious that he knows what's going on by his immediate response when they get to Baker Street. But Varela flashes the gang sign when they get to Baker Street, but Mr. San Nicolas is engaged in behavior that is provocative of the fight. That is, driving slowly through the neighborhood, joining the other three occupants of the car, interning and looking at, I think the term the court may be familiar with is mad-dogging, in the neighborhood of the opposing gang. They are there to provoke a fight. Also keeping the volume of his radio up. Volume up. And as my colleague repeated perhaps too often, wearing dark glasses in our briefing. And then when they get there, the truth of the matter is that Varela does initiate, not just initiate, he commits the first assault. He jumps out of the car and throws a beer can, a full beer can. So they have all done this together. The prosecutor argued that this was an organized hit. That the Court of Appeal, the California Court of Appeals, that this looks like an organized retaliation with individuals involved in guns. All of it is foreseeable. Being up to now, you haven't told me why Mr. Famani was wrong in saying Alvarado was found by the jury not to be a confederate. Well, I will answer that in two ways. First of all, he says that the trial court dismissed the conspiracy charge. True, but not quite complete. The charge that was dismissed by the trial court was conspiracy to commit murder. And the jury could, count one, the jury could reasonably have concluded that the prosecution had not proved beyond a reasonable doubt that the agreement to go start a fight included the specific intent to go and commit murder. But the jury was still instructed on an uncharged conspiracy to go there and provoke a fight. And then the jury did find that Mr. San Nicolas was not guilty of vicarious liability. They have simply found him not guilty there of that crime. We have what looks to me like an inconsistent verdict, I would agree. But inconsistent verdicts do not render invalid an otherwise supported verdict. They may simply have misunderstood. And we won't know and can't know. We only know that they found him not guilty of vicarious liability. It is a somewhat unusual concept, and they may simply have misunderstood. But there is no factual finding by either jury verdict or the trial court that Mr. San Nicolas and Mr. Alvarado were not engaged, jointly engaged, co-perpetrators in provoking a fight. What jury verdict was not guilty of what vicarious liability? One of the allegations, again, one of the sentencing enhancement allegations attached to the charge that applied to Mr. San Nicolas' count two murder, not conspiracy but actual murder, was that there were two allegations that the jury found not true. One was that the crime was committed in furtherance of gang activity, and the second was that he was vicariously armed. That is, another co-perpetrator had a firearm and used a firearm in the commission of the offense. So they found that the second one, another co-perpetrator was armed, was not true? They found, as to Mr. San Nicolas, yes, Your Honor. And they also found not true the associated gang allegation. And they found that another co-perpetrator was not armed because Varela was not armed and Alvarado was not a co-perpetrator. Well, I think it could be. I believe Alvarado was a co-perpetrator. That is, he is there. He is also aiding and abetting when they go. He is in the car to back up his fellows as they go to Big Street. That is at least a reasonable inference to be drawn from the evidence. What is the inference that you draw from the specific jury finding that another co-perpetrator was not armed? That the jury made a mistake. But they didn't resolve the question. Or that they didn't believe that that had been proved beyond a reasonable doubt, or they simply didn't understand the concept of vicarious liability. Isn't the only way to interpret that if it is not a mistake that Varela was not armed, he was a co-perpetrator, and Alvarado was armed, but he wasn't a co-perpetrator? Right. I think that, well, I think it would be a mistake to say that Alvarado is not a co-perpetrator. But they might have been mistaken about it. It's a mistake the jury made, right? Yes. Is there any reason to go behind the jury finding on that? Under Smith v. Cavazos, which you cited? Well, under Smith v. Cavazos, all we know is that the – what we know from Smith is that we analyze all of the evidence to see whether a rational juror could have found. A rational juror could have found the elements proved. And this rational jurors – jury found that Alvarado was not a co-perpetrator. I don't believe that's a finding. There's extensive Federal law and State law that says inconsistent verdicts don't affect the sufficiency of the evidence evaluation. We are unable to define. Don't you have to give credence to all of the jury's findings, not just the ones the prosecution wants? In sufficiency of the evidence, we have to give credence to all of the evidence. That's all that's required. But the evidence, we're going over the same ground. Apparently, the jury found the evidence was not sufficient, that there was another co-perpetrator armed. Right? You agree with that? They found him not guilty of vicarious – of being vicarious. Well, they found not true the special allegation that there was another co-perpetrator armed. Yes. What do we do with that? Well, perhaps they took Judge Hockenstack and said that – and believed that San Nicholas was the shooter when he got out. I mean, that is an explanation. I don't think it's the best one, but it is a possible one. But San Nicholas was on trial. He couldn't be the co-perpetrator. Well, under State law, I don't want to – I don't want to be presumptuous and imply that I can instruct you, Judge Bay, about California law. But an aider and abetter is a perpetrator. So perhaps the prosecutor didn't argue well, or perhaps it wasn't clarified that Alvarado was an aider and abetter. Give me a rational basis on which we can use the finding by the jury that another co-perpetrator was not armed, other than San Nicholas. Couldn't refer to San Nicholas. He's not a co-perpetrator. Varela was not armed, and Alvarado was not a co-perpetrator. I disagree as a matter of California law about whether they were – whether they were principals in the crime and co-perpetrators. They were aiders and abetters. And I think the jury's – I think the jury's finding with regard to – true finding of not vicariously armed is simply a mistake. But that's my explanation. And it may well be that the prosecutor didn't emphasize Alvarado's role as an aider and abetter because he was the actual shooter. So perhaps that was not crystallized and clarified. But I don't believe that a not – or a not true finding establishes, as a matter of fact, binding on any court that San Nicholas and Alvarado were not involved in this together. No, they may be involved in this together, but the question is, was the natural and probable consequence the murder? If that can only be laid at the door of San Nicholas if Alvarado was a co-perpetrator, the finding by the jury makes him not a co-perpetrator. I don't think it does make him one. The jury's finding was that the shooting was done by a co-perpetrator. That's one of the elements, one of the five elements that Mr. Farmani referred to. That is, Mr. San Nicholas intended to aid and abet. But there are only two people with guns. That's clear. One was San Nicholas. He's not a co-perpetrator because he's a principal. The other is Alvarado. You're asking me for a rational explanation for how they reached that. I think so. And my answer is they made a mistake or they were lenient or they didn't understand. But they're fine. But those things happen, and that's why inconsistent verdicts are permitted. All right. All right. Thank you very much. You've heard enough. If there are no other questions, thank you, Your Honor. Okay. Attorney Farmani again. In a case decided by this Court, the Court said that special verdicts by the jury are conclusive. So it would be a violation of the Sixth Amendment right to say otherwise. The jury here found that Mr. San Nicholas did not vicariously discharge a firearm. The Court found that there was no conspiracy between Alvarado and Mr. San Nicholas as a matter of law at the close of the prosecution's case. That right there by itself negates the fourth element, the fourth element that is required to be shown by the State. And that fourth element is a confederate, a confederate in the crime must commit a crime that's different than what was originally contemplated. Let's call it target crime and non-target crime. I'll give the government the benefit of doubt and say that the target crime here, which was a challenge to a fight, Alvarado was a confederate. Let's just say for a moment he was. How you get from that to a confederate to murder, to natural power consequences, when Mr. San Nicholas had no idea that Alvarado was armed, I just don't see it. I don't see the logical disconnect in the government's case is so wide, is so huge, that the jury, two days later, over the weekend, three jurors, two of whom submitted affidavits, came forward and said, we don't believe in the verdict. We don't, we can't believe in the verdict. And the reason why they said that, Your Honor, that brings us to the second issue. I think it's a strong issue as well. Although that issue can and should be analyzed under AEDPA, the prosecution repeatedly over and over and over again told the jury during closing argument with the blessing of the trial court that they're not entitled to self-defense. In absolute terms, you don't have to look at the jury instructions. They're not entitled to self-defense. They were at the very least entitled to imperfect self-defense. There was testimony over in the trial that they were rushed with bats, with crowbars, with a metal disc. Anybody in Alvarado's position, even if it was, even if his fear was unreasonable, would have, unreasonable, he would have had an entitlement to an imperfect self-defense. Jury didn't even evaluate it. Simply because the prosecution wanted to get a conviction for Mr. San Nicolas, who basically drove the car. He made a mistake. He drove the car there. But he didn't do anything. He didn't throw up a gang sign. He didn't know Alvarado was going to throw a gang sign. Even if he didn't know all that, even if he knew Alvarado was just this evil person, he just threw up a gang sign. Where is the knowledge that someone in the backseat of his car has got a gun? Where is the evidence? There is not one single evidence here that Mr. San Nicolas knew that anybody other than himself was on. That right there should end the analysis. Whether you're going under AEDPA or you're going under, you know. Couldn't you say in that situation, with two gangs involved, and let me know about what happens when you have two come together, that it's reasonably foreseeable that there's going to be a gun. Your Honor, if anybody in the Bakersfield. If you ever had a case, well, you probably have had a case. I don't know that I've been involved in a case that involves gang confrontations where there hasn't been a gun. Your Honor, assume that to be true. Assume that it's reasonably foreseeable that you go to gang territory, a gun battle will ensue. Had it been a Baker member, the rival gang, shooting at someone in the car, then I think we would have the provocative murder theory. He could have been prosecuted and convicted under provocative murder theory. But you've got a guy in the backseat of his car shooting a gun. Mr. San Nicolas would probably, for all we know, he probably was not crazy enough to drive down a gang territory knowing some 18-year-old who's got a lot of family issues sitting in the back of his car is going to be carrying a gun. He just simply didn't know. There's no evidence. To the contrary, how can you hold a man who's been serving 11 years to this day for murder and then for life, for the rest of his life, a young man, simply because he drove to gang territory? Are we to say that any time you drive into gang territory, you sport sunglasses and shaved heads and wear baggy clothes, that's it, your life is in danger? Are we going to give gang members, rival gang members carte blanche, saying, you know, you can do whatever you want as long as these people come in here looking like gang members? Mr. San Nicolas actually believed. He actually believed that he was going to go and crush the beef. That's why he went there. Even if he didn't go there, to jump from that to murder and give this man a life sentence would be injustice. Thank you. Thank you very much. Thank you. All right, that concludes this court session. And the court will adjourn.
judges: Pregerson, Hawkins, Bea